IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TIC - THE INDUSTRIAL COMPANY WYOMING, INC., | ) ) ) | |
| Plaintiff, | ) ) | 4:10CV3153 |
| v. | ) ) | |
| FACTORY MUTUAL INSURANCE COMPANY, and IMA OF KANSAS, INC., | ) ) ) | MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO STRIKE THE AFFIDAVIT OF MANDY MCNEIL |
| Defendants. | ) ) | |

Plaintiff TIC – The Industrial Company Wyoming, Inc. (TIC) has moved to strike a portion of Mandy McNeil's affidavit, which was submitted by Defendant IMA of Kansas, Inc. (IMA) in opposition to TIC's motion for partial summary judgment. (See Mot. to Strike, ECF No. 139; TIC's Mot. for Partial Summ. J., ECF No. 114; IMA's Index, Ex. C, McNeil Aff., ECF No. 136-4; IMA's Supp. Index, Ex. C, McNeil Aff., ECF No. 160-4.) TIC's motion will be granted in part.

I.  BACKGROUND

On March 22, 2012, TIC filed a motion for partial summary judgment on the issue of IMA's liability for "Negligent Failure to Procure Insurance." (See TIC's Mot. for Partial Summ. J. at 1, ECF No. 114; Am. Compl. ¶¶ 47-50, ECF No. 84.) Stated generally, TIC's claim is that IMA breached its "duty to obtain insurance coverage for [Pioneer Trail Energy, LLC (Pioneer)] that included 'delay in startup' coverage for TIC and on which TIC was named as an 'additional insured.'" (TIC's Br. Supp. Mot. for Partial Summ. J. at 2, ECF No. 115.) In support of its motion for partial summary judgment, TIC argues that Moore-McNeil, an "insurance consultant" for Pioneer and its lenders, "prepared a report which 'indicated what was necessary to meet the lenders' [insurance] requirements'" for the construction of an ethanol plant and related facilities in Wood River, Nebraska. (TIC's Br. at 3-4, ECF No. 115 (quoting TIC's Index, Shehan Aff. Ex. A, McKinney Dep. at 48:21-23, ECF No. 116-2).) According to TIC, this report (the Moore-McNeil

Report) "indicates, 'The insurance requirements for contractor [TIC] include builders risk and delay in startup.'" (Id. at 4 (citing McKinney Dep. at 52:4-25).)[1]   TIC did not include a copy of the Moore-McNeil Report in its Index of Evidence, however, although it did submit three pages of the Report in support of its reply brief.   (See generally TIC's Index, ECF No. 116; TIC's Reply Br. at 6, ECF No. 142; TIC's Reply Index, Ex. G, ECF No. 143-8.)

In response to TIC's motion for partial summary judgment, IMA argues,

> According to Mandy McNeil ("McNeil"), the person who drafted the Moore-McNeil Report, the document "is not intended to convey any requirement that delay in startup coverage be procured for TIC."   It was not McNeil's "understanding that delay in startup coverage was required for TIC," and she "never advised IMA in the [Moore-McNeil Report] or otherwise that delay in startup coverage was required for TIC in connection with the Wood River project."

(IMA's Response to TIC's Separate Statement of Undisputed Facts Including Numbered Paragraphs at 8-9, ECF No. 159 (quoting IMA's Supp. Index, Ex. C, McNeil Aff. ¶¶ 4-5, ECF No. 160-4) (citations omitted).   See also id. at 10, 12.)

IMA's response relies on a seven-paragraph affidavit signed by Mandy McNeil.   (See IMA's Supp. Index, Ex. C, McNeil Aff., ECF No. 160-4.)[2]   In her affidavit, McNeil states that she is "an insurance consultant" with "extensive experience addressing insurance issues and reviewing insurance requirements in the ethanol industry," and in 2006 she "consulted on the ethanol facility construction project that Pioneer Trail Energy, LLC built in Wood River, Nebraska."   (Id. ¶¶ 1-2.) She confirms that she wrote the Moore-McNeil Report "under instructions from BNP Paribas, as the arranger of the project financing, and Biofuel Energy, LLC, the borrower, for the benefit of the lenders that were financing the Wood River Project."   (Id. ¶ 3.)   She then states,

> 4.      The [Moore-McNeil Report] and its discussion of insurance requirements for the Wood River project is not intended to convey any requirement that delay in startup coverage be procured for TIC.   Nor was it my understanding that

---

[1] I note in passing that the cited deposition testimony does not include the language that TIC presents as a quotation.   I find, however, TIC's language fairly describes the witness's testimony about what the Moore-McNeil report states.   (See McKinney Dep. at 52:21-53:21.)

[2] This affidavit also appears in the record at ECF number 136-4, and it is cited on several pages of IMA's brief in opposition to TIC's motion for partial summary judgment.   (See Br. at 8, 9, 14, 15, 20, 22, 23, 27, ECF No. 135.)

delay in start-up coverage was required for TIC in connection with the Wood River project.

     5.    I never advised IMA in the [Moore-McNeil Report] or otherwise that delay in startup coverage was required for TIC in connection with the Wood River project.

     6.    In 2006 I reviewed a draft of an Engineering, Construction, and Procurement Contract between Pioneer Trial Energy, LLC and TIC. Based on my review it is my conclusion that the draft agreement did not require delay in startup coverage for TIC in connection with the Wood River project.

     7.    It is not standard in the industry for delay in startup coverage to be obtained for a contractor such as TIC. I was never party to any correspondence between TIC and IMA where TIC instructed IMA to obtain delay in startup coverage on TIC's behalf. TIC was not IMA's client or my client. Accordingly, I did not expect IMA to obtain delay in startup coverage for TIC and I do not believe that IMA committed any error by not obtaining delay in startup coverage for TIC.

(Id. ¶¶ 4-7.) She also states that a copy of the Moore-McNeil Report is attached to her affidavit "as Exhibit A." (Id. ¶ 3.) In fact, however, the affidavit is not accompanied by any exhibits. (See ECF Nos. 136-4, 160-4.)

On May 7, 2012, TIC moved to strike portions of paragraphs 4, 5, 6, and 7 of McNeil's affidavit. (ECF No. 139.) My analysis of this motion follows.


## II.   ANALYSIS

TIC argues that McNeil's affidavit must be stricken because it is contradicted by the Moore-McNeil Report and the deposition testimony of IMA's corporate representative; it contains inadmissible expert testimony; and Moore-McNeil failed to respond to TIC's subpoena. (See Mot. to Strike at 1-2, ECF No. 139.) I shall consider each of these arguments in turn.


### A.   Whether McNeil's Affidavit Contradicts the Moore-McNeil Report or the Deposition Testimony of IMA's Corporate Representative

TIC argues that McNeil's affidavit must be stricken because paragraphs 4 and 5 of the affidavit "contradict the unambiguous language in the Moore-McNeil Report and the admissions in IMA's 30(b)(6) deposition." (TIC's Br. at 3, ECF No. 140.)

I turn first to the question of whether paragraphs 4 and 5 of the affidavit contradict the Moore-McNeil Report.  Neither TIC nor IMA placed a complete copy of the Moore-McNeil Report in the summary judgment record; instead, each party relies primarily on witnesses' testimony about the Report though TIC did submit three pages of the Report in support of its reply brief.  In support of its motion to strike, TIC has provided me with the same excerpts from the Report that it submitted in support of its reply brief.  (Compare TIC's Index of Evid., Ex. A, ECF No. 141-2 with TIC's Reply Index, Ex. G, ECF No. 143-8.)  These excerpts consist of three pages: a title page stating, "Draft Insurance Report for BioFuel Solutions, LLC"; a contents page indicating that the Report spans at least 25 pages, excluding appendices; and a page that states, in relevant part, as follows:

> Pioneer / Wood River
>
> Engineering, Procurement and Construction Agreement
> - Between Pioneer Trail Energy, LLC ("Client") and TIC – The Industrial Company ("Contractor") dated April 28, 2006
> - Insurance Requirements for Contractor
>   - Builders Risk
>     - Full replacement
>     - Including Earthquake, Flood, Pollution/Hazardous Material Clean Up and Transit
>   - Delay in Start Up.

(Id. at IMA002429.)[3]  TIC argues that McNeil's affidavit "contradict[s] the unambiguous language" quoted above insofar as the affidavit "states the Moore-McNeil Report was 'not intended to convey any requirement that delay in startup coverage be procured for TIC.'"  (TIC's Br. at 3, ECF No. 140 (quoting IMA's Index, Ex. C, McNeil Aff. ¶ 4, ECF No. 136-4).)

I find that, although the excerpt from the Report may fairly be read to state that the Engineering, Procurement and Construction Agreement between Pioneer and TIC lists "Builders Risk" and "Delay in Start Up" as "Insurance Requirements for [TIC]," it does not state that IMA,

---

[3] To be clear, none of these excerpts are part of the summary judgment record, and I shall not consider them in that context.

Pioneer,  or any other entity must provide delay in startup coverage to TIC.  Thus, I see no conflict that might warrant an order striking McNeil's affidavit.[4]

TIC also argues that paragraphs 4 and 5 of McNeil's affidavit are contradicted by the deposition testimony of David McKinney, who was "IMA's designated corporate representative." (TIC's Br. at 2, 3, ECF No. 140; TIC's Index, Shehan Aff. ¶ 2, ECF No. 116-1.)  In support of its argument, TIC refers me to the following portions of McKinney's deposition:

> Q     Is it your understanding that Mandy McNeil of Moore-McNeil was retained as an insurance consultant for the lenders on the Wood River project?

> A     Yes.

> Q    Is it your understanding that Mandy McNeil of Moore-McNeil was also retained as a consultant for Pioneer in connection with the Wood River project?

> A     That would be my understanding.

> . . . .

> Q     In placing the builders risk insurance for the Wood River project, did IMA consider the information in the Moore-McNeil insurance report?

> . . . .

> A     Along with the other correspondence that we had with Moore-McNeil during the process.

> Q    . . . Did IMA endeavor to provide the insurance coverages that Moore-McNeil identified as required for the Wood River project?

> A     Yes.

---

[4] Taken in context, I read McNeil's statements that "delay in startup coverage was [not] required for TIC in connection with the Wood River Project," (see IMA's Index, Ex. C, McNeil Aff. ¶¶ 4, 5, ECF No. 136-4), to mean that IMA, BNP Paribas, and Biofuel Energy, LLC were not required to provide the coverage to TIC.

Q     If IMA could not have procured the insurance that would meet the requirements set forth in the Moore-McNeil report, would IMA have so advised Moore-McNeil?

A     Correct.

Q     Would IMA have advised Pioneer of that fact?

A     Yes.

Q     Okay.  Are you aware of any instance that IMA did so?

. . . .

A     I believe we met all the requirements of Moore-McNeil's insurance specifications.

Q     . . . You're not aware of any instance that IMA told Pioneer or Moore-McNeil that IMA could not place the coverages identified in the Moore-McNeil report?

A     Not specifically, no.

Q     Did you or anyone at IMA, to your knowledge, dispute any of the insurance requirements identified in the Moore-McNeil insurance report?

A     Not that I'm aware of.

. . . .

Q     As of July 21, 2006, would it be fair to say that IMA was made aware that Pioneer's builders risk insurance had to include TIC as an additional insured during the period of construction of the project?

A     Yes.

Q     Okay.  I'm going to ask you to turn to page 12 and turn your attention to the section entitled, "Delay in Startup" and "Contingent Delay in Startup"; do you see that?

A     Yes.

6

> Q    And in the first paragraph under that section it says, "The builders risk, and if insured through a separate policy, boiler and machinery policy for the project will be endorsed to include delay in startup insurance"; do you see that?
>
> A    I do.
>
> Q    Would it be fair to say that as of July 21, 2006, IMA was made aware that the builders risk policy for the Wood River project had to include delay in startup insurance?
>
> A    Yes.

(TIC's Br. at 2, ECF No. 140 (citing TIC's Index, Shehan Aff. Ex. A, McKinney Dep. at 47:3-12, 49:11-50:19, 51:11-52:8, ECF No. 116-2)).)  TIC's reasoning appears to be that because IMA has admitted (through McKinney) that TIC was to be included as an additional insured on Pioneer's builders risk insurance and that Pioneer's builders risk insurance had to include delay in startup insurance, IMA has therefore admitted that TIC was to be provided with delay in startup coverage. (See id.)  In the testimony quoted above, however, McKinney was not asked whether TIC was to be provided with delay in startup coverage, and he did not testify to that effect.  Indeed, IMA refers me to the following excerpts from the same deposition:

> Q    . . . Mr. McKinney, did you at some point learn that Pioneer had an obligation under the EPC contract to provide some type of insurance for TIC in connection with the Wood River project?
>
> . . . .
>
> A    Not on behalf of TIC.
>
> Q    . . . So you . . . never became aware that Pioneer had an obligation to provide insurance for TIC in connection with the Wood River project?
>
> . . . .
>
> A    Not on behalf of TIC.
>
> . . . .
>
> Q    And if Pioneer was required to provide delay in startup coverage for TIC during the construction phase of the Wood River project, would you have made sure that that was included in the policy?

A    I see nothing in the contract that would make that requirement.  No one's
ever asked for that before.  And no, I wouldn't have.


. . . .


Q    Would it be fair to say that as of July 24, 2006, IMA was made aware
through the EPC contract that Pioneer was required to obtain builders risk and delay
in startup coverage that would include the interest of TIC as an additional insured?


. . . .


A    No.


. . . .


Q    And I believe earlier you testified that no one ever asked IMA to obtain
delay in startup coverage for TIC?


. . . .


A    Yes, yes.


(IMA's Index, Bidgood Aff. Ex. B., McKinney Dep. at 38:20-39:10, 44:13-20, 58:8-15, 125:18-
126:2, ECF No. 162-3; see also IMA's Response Br. at 7, ECF No. 161.)  I find that McKinney's
deposition testimony does not conflict with paragraphs 4-5 of McNeil's affidavit, and therefore I
must reject TIC's argument that the affidavit must be stricken based on its alleged conflict with the
deposition.

### B.    Whether McNeil's Affidavit Improperly Asserts Expert Opinions

TIC argues next that "IMA impermissibly seeks to introduce expert opinion through
McNeil's affidavit, despite the fact that IMA failed to disclose McNeil as an expert witness by the
Court's expert disclosure deadline."  (TIC's Br. at 4, ECF No. 140.)  Specifically, TIC claims that
the following statements amount to improper expert testimony: "(1) the EPC Contract did not require
delay in startup coverage for TIC with respect to the Wood River Project; (2) it is not industry
standard for delay in startup coverage to be obtained for a contractor such as TIC; and (3) IMA did
not commit [error by] failing to obtain delay in startup coverage for TIC."  (Id. (citing IMA's Index,

Ex. C, McNeil Aff. ¶¶ 6-7 , ECF No. 136-4).)  In response, IMA claims that McNeil is not providing expert testimony, but rather "evidence of what McNeil intended to and actually did communicate to IMA."  (IMA's Response Br. at 9, ECF No. 161.)

"Rule 701 provides that if a witness is not testifying as an expert, then any testimony by the witness expressing his or her opinion or inference is limited to those that are rationally based on the witness's perception and helpful to understanding the witness's testimony or determining a fact in issue." United States v. Smith, 591 F.3d 974, 982 (8th Cir. 2010) (quoting U.S. Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 690 (8th Cir. 2009)).  "'Personal knowledge or perceptions based on experience' is sufficient foundation for lay testimony." Id. (quoting In re Air Crash at Little Rock Arkansas on June 1, 1999, 291 F.3d 503, 515-16 (8th Cir. 2002)).  "[P]erceptions based on industry experience [are] a sufficient foundation for lay opinion testimony." Id. (quoting U.S. Salt, Inc., 563 F.3d at 690) (emphasis in original).  "However, a lay [witness]'s opinion must not be based on 'scientific, technical, or other specialized knowledge within the scope of Rule 702." Id. at 982-83 (quoting Fed. R. Evid. 701(c)).  "This inquiry requires a case-by-case analysis of both the witness and the [witness]'s opinion." Id. at 983 (citing In re Air Crash, 291 F.3d at 515-16).

As noted previously, McNeil's affidavit states in paragraph 6,  "In 2006 I reviewed a draft of an Engineering, Construction, and Procurement Contract between Pioneer Trial Energy, LLC and TIC.  Based on my review it is my conclusion that the draft agreement did not require delay in startup coverage for TIC in connection with the Wood River project." (IMA's Index, Ex. C, McNeil Aff. ¶ 6, ECF No. 136-4.)  I shall not consider this paragraph as evidence of what the Engineering, Construction, and Procurement Contract between Pioneer and TIC requires.  To that extent, TIC's motion to strike the second sentence quoted above is granted.  It is important to note, however, that McNeil's affidavit has been offered to rebut TIC's argument that McNeil published a different conclusion about the contract's requirements in her written report. (See TIC's Br. in Supp. of Partial Mot. for Summ. J. at 3-4, ECF No. 115.)  To the extent that the fact that McNeil reached–and published–a certain conclusion about the requirements of the contract is relevant, paragraph 6 will not be stricken on the ground that it constitutes impermissible expert testimony.

In paragraph 7, McNeil's affidavit states, "It is not standard in the industry for delay in startup coverage to be obtained for a contractor such as TIC." (IMA's Index, Ex. C, McNeil Aff. ¶

7, ECF No. 136-4.)  The affidavit also states that McNeil is "an insurance consultant" with "extensive experience addressing insurance issues and reviewing insurance requirements in the ethanol industry."  (Id. ¶ 1.)  The Eighth Circuit has held that perceptions based on industry experience provide sufficient foundation for lay opinion testimony, see United States v. Smith, 591 F.3d 974, 982 (8th Cir. 2010); Burlington Northern R.R. Co. v. Nebraska, 802 F.2d 994, 1004-05 (8th Cir. 1986), and therefore I shall not strike this portion of paragraph 7 on the ground that it amounts to impermissible expert testimony.

Finally, paragraph 7 of McNeil's affidavit continues, "I was never party to any correspondence between TIC and IMA where TIC instructed IMA to obtain delay in startup coverage on TIC's behalf.  TIC was not IMA's client or my client.  Accordingly, I did not expect IMA to obtain delay in startup coverage for TIC and I do not believe that IMA committed any error by not obtaining delay in startup coverage for TIC."  (IMA's Index, Ex. C, McNeil Aff. ¶ 7, ECF No. 136-4.)  TIC submits that the clause, "I do not believe that IMA committed any error by not obtaining delay in startup coverage for TIC," constitutes expert testimony and must be stricken.  (TIC's Br. at 4, ECF No. 140.)  It seems to me, however, that paragraph 7 (and the affidavit as a whole) shows that McNeil's opinion is based on her personal knowledge and her industry experience, not "scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701(c).  Therefore, I shall not strike the clause on the ground that it constitutes expert testimony.

I note that although most of McNeil's opinions do not amount to impermissible expert testimony, it does not necessarily follow that all of her lay opinions will be helpful in determining whether IMA committed negligence.  See Fed. R. Evid. 701(b).

### C.   Whether McNeil's Affidavit Must Be Stricken Because Moore-McNeil Failed to Respond to TIC's Subpoena Duces Tecum

TIC argues that "fairness and equity require that McNeil's affidavit be stricken from the record" because "Moore-McNeil disregarded and failed to respond' to TIC's subpoena duces tecum. (TIC's Br. at 6, ECF No. 140.)

In support of its argument TIC cites Shelton v. Kennedy Funding, Inc., 622 F.3d 943, 959-60 (8th Cir. 2010), wherein the district court gave the following instruction to a jury at the conclusion of a trial:

> You may consider the failure of [Moskowitz] to honor the deposition subpoena in weighing her credibility in the exhibits admitted which were authored by her and in weighing the credibility where statements as related by witnesses who testified in court.

On appeal, the Eighth Circuit rejected the defendant's argument that "the jury instruction . . . 'place[d] undue emphasis on an irrelevant matter' and 'mislead[] the jury regarding the significance of [Moskowitz]'a absence,'" stating,

> [The defendant] presented the court with an exhibit that on its face appeared to be inauthentic.  The exhibit's author had disobeyed a subpoena, failed to appear for her deposition, and was unavailable to testify at trial.  It was reasonable and fair to permit [the plaintiff] to cross-examine the exhibit's recipient and inform the jury the exhibit's author–who worked for [the defendant] when she drafted the exhibit–would not testify to explain the discrepancy in dates.

Id. at 960 (citations omitted).

There are several distinctions between this case and Shelton.  In the instant case, the issue is not whether dubious exhibits authored by a certain witness may be given less weight due to the witness's unavailability, but whether a witness's affidavit should be stricken in its entirety from the summary judgment record because her employer made no response to a subpoena duces tecum.  Unlike Shelton, here there is no indication that McNeil's affidavit is inauthentic, and there is no evidence that McNeil disobeyed a subpoena, failed to appear for a deposition, refused to make herself available to TIC, or otherwise evaded TIC's discovery efforts.  Nor is there any indication that McNeil was employed by IMA (unlike Moskowitz, who worked for the defendant at the relevant times).  In short, I am not persuaded that the court's reasoning in Shelton supports the striking of McNeil's affidavit.  More generally, I am not persuaded that McNeil's affidavit must be stricken because Moore-McNeil did not answer TIC's subpoena for documents and communications related to this case.

In its reply brief, TIC notes that both McKinney's deposition testimony and McNeil's affidavit suggest that there may have been "correspondence and verbal communication" between IMA and Moore-McNeil apart from the Moore-McNeil Report, and there is no dispute that "McNeil

failed to produce these 'other' communications or <u>any</u> information . . . in response to TIC's subpoena." (TIC's Reply Br. at 4, ECF No. 166.)  TIC's subpoena was directed to Moore-McNeil, not McNeil personally.  (<u>See</u> TIC's Supp. Index, Shehan Aff. Ex. A, ECF No. 167-2.)  Moreover, I am not convinced that TIC's suspicions that Moore-McNeil possesses documents that ought to have been produced in response to the subpoena warrant an order striking McNeil's affidavit.

**IT IS ORDERED** that TIC's motion to strike the affidavit of Mandy McNeil, ECF No. 139, is granted in part as explained in the memorandum accompanying this order.

Dated July 11, 2012.

BY THE COURT:

_Warren K. Urbom_

Warren K. Urbom
United States Senior District Judge